UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ALICIA WHITE,

                Plaintiff,

v.

DUPONT SPECIALTY PRODUCTS, LLC,

                Defendant.

**DECISION AND ORDER**
21-CV-539S

---

## I.    Introduction

This is a removed employment discrimination action alleging violations of various federal[1] and New York State[2] discrimination statutes by Plaintiff's employer, DuPont Specialty Products, LLC. As Plaintiff returned to work from medical leave, she alleges enduring discrimination by Defendant (as described below) until her suspension and eventual termination by Defendant in September 2018. Plaintiff then sued in New York State Supreme Court, Erie County, on or about March 20, 2021 (Docket No. 1, Notice of Removal, Ex. D).

Following removal to this Court (Docket No. 1), Defendant now moves to dismiss the Complaint (Docket No. 5). For the reasons that follow, that Motion is granted in part. This Court dismisses Plaintiff's federal causes of action, declines to exercise supplemental jurisdiction over her remaining New York State HRL claim, and remands this case to New York State Supreme Court.

---

[1] Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), and Family Medical Leave Act, 29 U.S.C. § 2615 ("FMLA").

[2] The New York State Human Rights Law, N.Y. Exec. Law § 296 ("HRL").

## II. Background

A. Facts as Alleged in the Complaint

According to the Complaint (Docket No. 1, Ex. D), Plaintiff seeks relief from her employer for age, disability, veteran status, union conduct discrimination, and retaliation in violation of the FLSA, the FMLA, and the New York State HRL (id. at page 1, ¶¶ 6-7, 5). Plaintiff was over 40 years old, a veteran of the United States Army, and disabled due to herniated disks in her neck (id. ¶¶ 8, 9, 10). She worked for Defendant for about 25 years when she was terminated (id. ¶ 7).

In 2014, Plaintiff went out on disability leave for treatment of her neck (id. ¶ 11). Upon her seeking to return to work (at an unspecified date), a new supervisor subjected Plaintiff to testing, including psychological testing, ostensibly to determine her "fitness" to resume work (id. ¶¶ 12-13). A Veterans Affairs doctor cleared Plaintiff for duty with a short-term disability (id. ¶ 14). Defendant nevertheless kept Plaintiff on probationary status which Plaintiff believes should have ended by 2016. She was in that status until her suspension and termination in 2018. (id. ¶¶ 15-17.)

After her return, Defendant ordered Plaintiff to pull union stickers from lockers (id. ¶ 18) but Plaintiff challenged this order (id. ¶ 19). Later in 2018 Defendant began to write up Plaintiff for numerous alleged (but unspecified) infractions that Plaintiff claims were either "exaggerated and/or wholly fabricated" (id. ¶ 21). While her duties were still performed during her suspension (and following her later termination) on these alleged infractions, she believed her suspension and termination was a pretext for termination on other grounds (her age, disability, veteran status, in retaliation for her opposition toward

Defendant's illegal anti-union conduct in removing union stickers from lockers, and/or her taking substantial Family Medical Leave) (id. ¶¶ 29-30).

On or about April 2018, Defendant demanded that Plaintiff enter into a "last chance" agreement (id. ¶ 22), but she does not allege whether she complied. On or about September 2018, Defendant suspended Plaintiff without pay (id. ¶ 23), although at that time Plaintiff needed six more years of service to reach retirement age (id. ¶ 24). Plaintiff alleges that, up to this period, her performance evaluations were good (id. ¶¶ 24-25). She argues that Defendant's actions were intentional and intended to harm her (id. ¶ 31).

Plaintiff alleges in the First Cause of Action violation of the FMLA (id. ¶¶ 33-39). There, she claims that she exercised her statutory rights under that act when she took leave for her herniated disks (id. ¶ 34). She alleges that Defendant then terminated her (id. ¶ 35). She also claims that she is qualified for her former position, having performed it for 25 years and having received good evaluations (id. ¶ 36). Upon information and belief, Plaintiff claims that her former job was still performed (id. ¶ 37). She claims she suffered economic and emotional harm from this violation (id. ¶ 38).

Plaintiff claims in her Second Cause of Action that Defendant discriminated against her in violation of the New York HRL (id. ¶¶ 41-51). Asserting the elements under New York Executive Law § 296, Plaintiff alleges that she was a member of protected classes because she was older than 40 years old, an Army veteran, and disabled due to her herniated disk (id. ¶¶ 42, 43-45). She claims that her termination was an adverse action (id. ¶ 46). She again claims she was qualified for her former job and that it was still being performed after her termination (id. ¶¶ 47, 48). Plaintiff concludes that she alleged a prima facie case of discrimination, raising an inference of unlawful motives (id.

¶ 49). She contends that this inference is bolstered by Defendant hiring younger, nondisabled, and non-veteran employees who were not terminated for allegedly comparable infractions as hers (id. ¶ 50).

Plaintiff finally asserts in her Third Cause of Action that her termination was in retaliation of Plaintiff refusing to comply with the illegal order to remove union stickers from lockers, in violation of the FLSA (id. ¶¶ 53-60, 52, 18-21). She claims that Defendant alleged infractions that she now contends are either cover or pretext for the real reasons for her termination (id. ¶¶ 57-58, 21, 29). She argues that Defendant suspended (and then terminated) her as punishment for her opposition to Defendant's illegal acts against unions (id. ¶ 59, see id. ¶¶ 18-21).

Plaintiff alleges the loss of her salary, bonuses, benefits, pension and incurring out-of-pocket medical expenses. She also claims future pecuniary losses, emotional pain, suffering, inconvenience, and other pecuniary losses. (Id. Injury and Damages, Prayer for Relief at page 6.)

B. Proceedings and Motion to Dismiss (Docket No. 5)

On or about March 20, 2021, Plaintiff filed her verified Complaint against Defendant in the New York Supreme Court, Erie County (Docket No. 1, Exs. D, E). Defendant then removed this action to this Court (Docket No. 1, Notice of Removal).

On April 30, 2021, Defendant moved to dismiss (Docket No. 5[3]). Responses were due May 17, 2021, and reply by May 24, 2021 (Docket No. 6). After timely responses and replies (Docket Nos. 7, 8), the Motion is deemed submitted without oral argument.

---

[3]In support of Defendant's Motion, Defendant submits its Memorandum of Law, Docket No. 5, and its Reply Memorandum of Law, Docket No. 8.
In response, Plaintiff submits her Memorandum of Law in opposition, Plaintiff's Reply Memo. to Defendant's Motion to Dismiss, Docket No. 7 ("Pl. Memo.").

### III.   Discussion

A.  General Applicable Standards

1.  Motion to Dismiss, Rule 12(b)(6)

Under Rule 12(b)(6), this Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46); see Shultz v. Congregation Shearith Israel of City of N.Y., 867 F.3d 298, 302 (2d Cir. 2017) (applying Twombly to Title VII claim on Motion to Dismiss); Alexander v. Board of Educ. of City of N.Y., 648 F. App'x 118, 120 (2d Cir. 2016) (summary Order) (applying Twombly standard to FMLA retaliation allegation); Yanklowski v. Brockport Cent. Sch. Dist., 794 F. Supp.2d 426, 427 (W.D.N.Y. 2011) (Larimer, J.) (same).

As summarized by commentators, 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 417 (Civil 3d ed. 2004), for purposes of a Rule 12(b)(6) Motion, the Complaint is construed in the light most favorable to Plaintiff; its allegations are taken as true; and all reasonable inferences that can be drawn from the Complaint are drawn in Plaintiff's favor.

To survive a Motion to Dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at

5

555; Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5.  As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference, Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).

Plaintiff now argues that Twombly and Iqbal sets pleading standards while Defendant argues whether Plaintiff established a prima facie case, a trial evidentiary standard (Docket No. 7, Pl. Memo. at fourth unnumbered page).  She distinguishes the pleading standard from a trial (or Motion for Summary Judgment) evidentiary standard (id.).  She is correct as to the difference in these standards, but Plaintiff at this threshold still needs to allege facts that plausibly states a claim.

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint.  Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual

6

averments will not be accepted as true.  New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123, 126 (N.D.N.Y. 2002).

### B. Unfair Labor Standards under the Fair Labor Standards Act and the National Labor Relations Act

This Court initially considers whether Plaintiff states a claim under federal labor law in her Third Cause of Action.  There, Plaintiff alleges Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 216(b), in retaliating against her.  Plaintiff now withdraws her FLSA claim (Docket No. 7, Pl. Memo. at fifth unnumbered page), Defendant's Motion (Docket No. 5) to dismiss the Third Cause of Action for violation of the FLSA and alleged unfair labor practice is granted.

Next, this Court considers the remaining federal question claim—Plaintiff's FMLA retaliation claim, alleged in the First Cause of Action—the basis for removal of this case. Then, this Court decides whether to exercise supplemental jurisdiction over the New York State HRL Second Cause of Action.

### C. Family Medical Leave Act Claim

#### 1. Applicable Standards, 29 U.S.C. § 2615

It is unlawful for an employer to discharge "or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA, 29 U.S.C. § 2615(a)(2).

To allege a FMLA retaliation claim and apply the prima facie case analysis of McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Plaintiff needs to allege that she exercised her FMLA rights, that she suffered from a materially adverse action, that she was qualified for her position, and that her job duties were still being performed, Potenza v. City of N.Y., 365 F.3d 165, 168 (2d Cir. 2004)

(Docket No. 1, Ex. D, Compl. ¶ 33), and that the adverse action occurred under circumstances that gives rise to an inference of retaliatory intent, id. (Docket No. 5, Def. Memo. at 5 & n.3); De Figueroa v. N.Y., 403 F. Supp.3d 133, 156 (E.D.N.Y. 2019) (motion to dismiss FMLA retaliation claim).  If the Complaint "fails to show a 'causal connection between the protected activity and the adverse employment action' the claim fails," Alexander v. Board of Educ. of City Sch. Dist. of City of N.Y., 107 F. Supp.3d 323, 328 (S.D.N.Y. 2015) (quoting Holt v. KMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir. 1996); Perry v. NYSARC, Inc., 424 F. App'x 23, 26 (2d Cir. 2011) (summary Order)).

> "A plaintiff can demonstrate a causal connection (a) indirectly by showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus.  DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987),"

Carr v. Westlb Admin., Inc., 171 F. Supp.2d 302, 309 (S.D.N.Y. 2001).

A Complaint alleging a FMLA retaliation claim "need not plead specific facts establishing a prima facie case of discrimination in order to survive a motion to dismiss," Peterson v. Long I. R.R., No. 10CV480, 2010 WL 2671717, at *2 (E.D.N.Y. June 30, 2010).  That Plaintiff "need only show that [her] claims are plausible under Iqbal and Twombly," by "plead[ing] facts sufficient to state a claim to relief that is plausible on its fact," Harper v. N.Y.C. Hous. Auth., 673 F. Supp.2d 174, 178, 180 (S.D.N.Y. 2009); Smith v. Westchester Cou., 769 F. Supp.2d 448, 469 (S.D.N.Y. 2011).

The FMLA has a two-year statute of limitations after the alleged ordinary violation, but a claim of willful violation of the Act has a three-year limitation period, 29 U.S.C. § 2617(c)(1), (2) (Docket No. 5, Def. Memo. at 3).  An FMLA violation is willful "if an employer either 'knew or showed reckless disregard' for whether its conduct violated the

8

FMLA," De Figueroa, supra, 403 F. Supp.2d at 154 (quoting Porter v. N.Y. Univ. Sch. of Law, 392 F.3d 530, 531 (2d Cir. 2004) (per curiam). "However, if an employer acted reasonably, or 'unreasonably[] but not recklessly[,] in determining its legal obligation,' then the alleged violations should not be considered willful," id. (quoting Mejia v. Roma Cleaning, Inc., 751 F. App'x 134, 136 (2d Cir. 2018) (summary Order) (quoting in turn McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988))). Retaliation against an employee for exercising FMLA rights is almost "by definition a 'willful' violation," Offor v. Mercy Med. Ctr., 676 F. App'x 51, 54 n.2 (2d Cir. 2017) (summary Order); De Figueroa, supra, 403 F. Supp.3d at 154.

### 2. Parties' Contentions

Defendant argues that Plaintiff's FMLA claims are time barred (Docket No. 5, Def. Memo. at 3-5). Plaintiff's termination (her claimed adverse employment action) was some time after her suspension in September 2018 (since she never returned to work following her suspension). Plaintiff filed this action in New York Supreme Court in March 2021 and Defendant concludes that the FMLA claims for her September 2018 suspension are time barred (id. at 2 n.2, 4). Defendant denies that Plaintiff alleged willful conduct for the three-year limitation period (id. at 3-4). It also contends that Plaintiff's conclusory allegations inadequately states a claim (id. at 4-5 (failing to assert intentional conduct), 5-6). Defendant then argues the four years between Plaintiff's return from FMLA leave and her termination could not possibly give rise to a causal connection or inference of retaliatory intent (id. at 6).

Plaintiff responds arguing that under fair notice pleading required by the Federal Rules of Civil Procedure Rule 8(a)(2), she alleged actionable claims despite Defendant's

"over-reading" of Twombly, supra, 550 U.S. 544, and Iqbal, supra, 556 U.S. 662, and the plausibility requirement for pleadings (Docket No. 7, Pl. Memo. at fifth to eleventh unnumbered pages). She does not, however, contest the timeliness of her claims.

In reply, Defendant argues that Plaintiff has not addressed dismissal of her FMLA claims (Docket No. 8, Def. Reply Memo. at 2). Although Plaintiff argues that she now alleges a Title VII claim (Docket No. 7, Pl. Memo. at fifth unnumbered page), Defendant counters that Plaintiff is not entitled to any relief under Title VII, 42 U.S.C. § 2000e, because she never sued under that act and failed to exhaust her administrative remedies, the predicate for suit under Title VII (Docket No. 8, Def. Reply Memo. at 5-6).

### 3. FMLA Retaliation and Timing of Claims

Plaintiff has not addressed the timeliness of her FMLA claims; instead, she focuses on the pleading standard and whether she alleged New York State HRL or Title VII claims (cf. Docket No. 7, Pl. Memo.). Plaintiff barely acknowledges her FMLA claims.

The appropriate limitations period under FMLA depends upon whether Plaintiff alleged willful conduct by Defendant in retaliating against her for exercising her leave rights. Willful conduct has a three-year limitations period (or running to September 2021 from her September 2018 suspension). If Plaintiff alleges willful conduct, her Complaint would be timely. Otherwise, ordinary FMLA retaliation has a two-year limitations period and the Complaint would be time barred.

### a. Allegation of Willful Conduct

The Complaint here concludes Defendant engaged in willful conduct (Docket No. 1, Ex. D, Compl. ¶ 38; see also id. ¶ 31 (Defendant's actions were intentional)) but does not allege facts supporting that conclusion. As unsupported conclusory allegations,

10

this Court does not accept Plaintiff's averments as true, N.Y.S. Teamsters Council, supra, 235 F. Supp.2d at 126.  Furthermore, Plaintiff now does not argue the timeliness of her claims or suggest willful conduct.

Plaintiff has not alleged Defendant acted willfully or identified willful conduct to justify a three-year limitations period.  She does not plead enough facts to state plausibly any willful conduct, thus the three-year limitations period is unwarranted.

Giving the Complaint a generous reading required under Rule 12(b)(6), see Koppel v. 4987 Corp., 167 F.3d 125, 138 (2d Cir. 1999), and taking all reasonable inferences from the Complaint, one potential ground for willful conduct was assigning Plaintiff (an over twenty-five-year employee of Defendant) to probationary status when she returned from FMLA leave.  She returned from leave to what became a permanent probationary status, without alleging what that status included.  She also did not allege that this probationary assignment was willful.

Probationary employment usually means that the employee must prove they are able to perform the job to continue employment, see Black's Law Dictionary at 1202 ("probation") (6th ed. 1990); see also, e.g., Hopkins v. Consolidated Edison Co. of N.Y., Inc., No. 87 CIV. 6947, 1988 WL 96090, at *1 (S.D.N.Y. Aug. 19, 1988) (defining "on-trial" employee as an employee who is in first six months of probationary employment with defendant company).

Here neither party alleged the scope of DuPont Specialty's probationary employment or whether an experienced employee could be placed on probation.  Plaintiff has not alleged any difference between her earlier employment with Defendant and her post-leave probationary employment.  She also did not attribute the subsequent alleged

11

infractions to her probationary status. This Court cannot determine on this record whether this placement is willful.

Presumably, probationary status would allow Defendant to terminate the probationary employee with or without cause. She alleges cause for her termination despite disputing the legitimacy of that cause (see Docket No. 1, Ex. D, Compl. ¶¶ 29-30, 35). Plaintiff, however, has not alleged the consequences for assignment to probationary status or established willfulness.

Another possible example of willfulness is hindering or denying Plaintiff FMLA leave. Although she alleges termination for taking "a substantial amount of FMLA leave" (id. ¶ 30), Plaintiff does not claim that she sought further FMLA leave, that Defendant impeded her from claiming that leave, or Defendant punished Plaintiff for her taking FMLA leave.

In De Figueroa, the court held that the three-year limitations period for willful conduct applied because retaliation against an employee for exercising FMLA rights "'is almost by definition a "willful" violation,'" 403 F. Supp.3d at 154 (quoting Offor, supra, 676 F. App'x at 54 n.2). There, Plaintiff Desiree De Figueroa alleged that the individual defendants exhibited reckless disregard for their obligation to refrain from retaliating against Plaintiff for requesting FMLA leave. De Figueroa alleged a series of incidents showing individual defendants' resistance to FMLA leave and allegations of retaliatory conduct for her requests for that leave. Id. at 143-44. Defendant John Gergen, the undergraduate biology director at the State University of New York at Stony Brook, expressed his belief that employees in his department (including De Figueroa) should not take FMLA leave, becoming openly hostile to De Figueroa and other employees seeking

leave, id. at 143, 144. After Gergen learned that De Figueroa told another employee about FMLA procedures, Gergen assigned De Figueroa to tasks that were beyond the responsibilities of her position (such as distributing 1,300 books throughout the biology department), id. at 144. Defendants allegedly retaliated by falsely accusing De Figueroa of forging her medical certification, altering her job responsibilities, denying her a promotion and a discretionary bonus, and negatively evaluating her. Id. at 145, 154. The court found that, if taken under these circumstances, these actions rose to an inference of retaliation, would exhibit reckless disregard of Defendants' obligations under the Act, and thus the three-year limitations period applied. Id. at 154-55.

Contrast the sparse facts Alicia White asserts for her FMLA retaliation claim in this case. Here, she alleges that Defendant placed Plaintiff (a longtime employee) on probationary status after returning from FMLA leave (Docket No. 1, Ex. D, Compl. ¶¶ 15-17). She does not allege how long she had been on FMLA leave when she resumed work or what that status entailed. Her probationary status continued after she provided medical clearance to return to some semblance of work and continued through her suspension and eventual termination (id. ¶¶ 12-14, 16-17). Plaintiff later was written up for infractions she characterizes as exaggerated or fabricated, but these arose after she refused to engage in anti-union activities for Defendant (cf. id. ¶¶ 18-23). She does not allege what those infractions were or how they were unjustified. She also does not allege that these infractions were due to her using FMLA leave in 2014 save her conclusory pretext allegation (cf. id. ¶¶ 29, 30, 38).

Accepting as true for purposes of this Motion to Dismiss, the Complaint nevertheless fails to allege either willful conduct or reckless disregard for Defendant's obligation to refrain from retaliation, cf. De Figueroa, supra, 403 F. Supp.3d at 154.

Here, White obtained and used FMLA leave in 2014 returning sometime in 2016 to a probationary status that continued until 2018. There are no further allegations regarding her use or application to use FMLA leave. Plaintiff thus fails to allege willful conduct to warrant the longer limitations period.

b.  Applicable Limitations Period

Absent alleged willful conduct, the applicable limitations period is two years. It is uncontested that the last date alleged was September 2018 and Plaintiff's suspension (and leading to her termination at some unstated date) but she filed her state Complaint on March 20, 2021 (Docket No. 1, Ex. D, Compl. ¶ 23), more than two years later. Plaintiff's timely FMLA claim, however, expired as of September 2020. Plaintiff's March 2021 Complaint thus is time barred.

Therefore, Defendant's Motion to Dismiss (Docket No. 5) the First Cause of Action on limitations grounds is granted. With Plaintiff's two original federal jurisdiction claims (alleged in the First and Third Causes of Action) dismissed, this Court next considers supplemental jurisdiction and whether to exercise it to entertain the Second Cause of Action under the New York State Human Rights Law.

D.  New York State Human Rights Law and Supplemental Jurisdiction

Supplemental jurisdiction over the state law claims may be raised by the parties or by this Court sua sponte, Lyndonville Sav. Bank & Trust v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000); LaChapelle v. Torres, 37 F. Supp.3d 672, 680 (S.D.N.Y. 2014). The

parties here do not discuss supplemental jurisdiction. This Court, however, must examine its jurisdiction at any point in the proceeding, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (the district court has "to consider throughout the litigation whether to exercise its jurisdiction over the case").

Original federal jurisdiction here arises from removal of this case based upon federal subject matter jurisdiction from Plaintiff's FMLA and FLSA retaliation claims alleged in the First and Third Causes of Action. The Second Cause of Action under New York Human Rights Law contains the same nucleus of operative facts as the First and Third Causes of Action. Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over Plaintiff's state law claims, see Klein v. London Star Ltd., 26 F. Supp. 2d 689, 692 (S.D.N.Y. 1998), or may decline to hear these supplemental state law claims, 28 U.S.C. § 1367(a), (c).

With the original jurisdiction claims dismissed, this Court will not exercise supplemental jurisdiction over Plaintiff's Second Cause of Action and will not consider whether she states a claim under the New York State Human Rights Law. This case is remanded upon finding lack of subject matter jurisdiction. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded," 28 U.S.C. § 1446(c). This Court also has the discretion to remand to state court a removed case where "jurisdictionally sufficient claims have been eliminated and only the pendent (now 'supplemental') state-law claims remain," 14C Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Joan Steinman & Mary Kay Kane, Federal Practice and Procedure, § 3739, at 765-66 (Juris. 2018); Carnegie-Mellon Univ., supra, 484 U.S.

at 353 (even if statute of limitations has not expired, "a remand may best promote the values of economy, convenience, fairness, and comity").

Thus, the remaining Second Cause of Action is remanded to New York State Supreme Court, Erie County.

### IV.     Conclusion

Considering first the two of Plaintiff's three Causes of Action alleging federal claims (the First and Third Causes of Action), Plaintiff has not stated a claim under the Family Medical Leave Act in her First Cause of Action because this claim is time barred. This claim is dismissed. Plaintiff next expressly abandons her Fair Labor Standards Act alleged in the Third Cause of Action; this claim also is dismissed.

This Court declines to exercise supplemental jurisdiction over the Plaintiff's Second Cause of Action for violation of the New York State Human Rights Law. Since this case was removed from state court, the remaining claim is remanded to New York State Supreme Court, Erie County.

Defendant's Motion to Dismiss (Docket No. 5), therefore, is granted and this case is remanded to state court.

### V.     Orders

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 5) is GRANTED.

FURTHER, that the Clerk of Court is directed to close this federal case and remand the remaining Second Cause of Action to New York State Supreme Court, Erie County.

SO ORDERED.

Dated:     September 8, 2022
           Buffalo, New York

                                              s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                          United States District Judge